550 A.2d 274

City of Philadelphia and W. Wilson Goode, Mayor, Genevieve Grant, Revenue Commissioner, Florence Scott, Commissioner of Records, Appellants v. Max Weiner and Consumers Education & Protective Association (CEPA), Appellees.

Argued September 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and MCGINLEY.

*Seymour Kurland,* City Solicitor, with him, *Evan Meyer,* Assistant City Solicitor, and *Arlene F. Bell,* Deputy City Solicitor, for appellants.

*Max Weiner,* appellee for himself.

*David Kairys,* with him, *Adam Thurschwell, Kairys & Rudovsky,* for appellee, Consumers Education & Protective Association (CEPA).

*Howard D. Scher,* with him, *Dennis P. Lynch;* Of Counsel: *Lennard B. Steinberg, Montgomery, McCracken, Walker & Rhoads,* for intervening appellees, Christopher Artur, Stephen F. Blau, Allan Domb, Jo-

seph C. Fluehr, Jr., Joseph E. Sindoni and the Philadelphia Board of Realtors.

OPINION BY JUDGE CRAIG, November 15, 1988:

The City of Philadelphia appeals a decision of Judge MURRAY C. GOLDMAN, of the Court of Common Pleas of Philadelphia County, granting a preliminary injunction which enjoined the city from enforcing Bill 164, a provision to increase the amount of the city's real estate transfer tax.[1]

The issue presented in this appeal is whether a councilmanic bill to amend the Philadelphia realty transfer tax rate has been "considered at a public hearing" in accordance with section 2-201(2) of the Philadelphia Home Rule Charter if it remained blank as to the proposed rate of tax, which council did not disclose until after adjournment of the public hearings. We conclude that because the rate of the tax was in fact the only aspect of the transfer tax to be amended, and because council never disclosed that indispensable element of the bill before or during the public hearings, council therefore did not provide a complete or meaningful bill to be "considered at a public hearing," and thus violated section 2-201(2) of the charter. Hence, we affirm.

The facts of the case are undisputed. On May 12, 1988, as part of the council's 1988-1989 fiscal year budget process, Council President Joseph E. Coleman introduced Bill 164, entitled an Ordinance to "Amend Section 19-1403 of the Philadelphia Code relating to imposition of the realty transfer tax by increasing the rate of tax imposed by taxable conduct." The only change to section 19-1403, as proposed by Bill 164, related to the

---

[1] Section 19-1403 of the Philadelphia Code.

rate of the tax. However, Bill 164 contained no indication of the proposed new rate.

On May 13, 1988, the bill was advertised for a public hearing before the Committee of the Whole, which council scheduled for May 18, 1988. The advertisement for the public hearing contained no mention of the proposed rate of increase.

On May 18, 1988, the committee conducted the advertised hearing. Although testimony was heard on Bill 164, at no time during the hearing did the committee discuss or reveal any proposed tax rate. The committee recessed the hearing and scheduled it to be reconvened on May 23, 1988.

When the hearing reconvened on May 23, 1988, the committee again failed to disclose the proposed tax rate. The committee continued the hearing a second time to May 24, 1988. At this hearing, the committee again did not announce a proposed rate of increase of the tax. At the conclusion of the last public hearing, Council President Coleman stated "[w]e at this time are going to close the public hearing and go into public meeting . . . [to] vote on bills as they come up." Then, in the public meeting, Councilman Street, for the first time, proposed an increase of one-and-one-half percent (1.5%) to the existing two-and-one-half percent (2.5%) realty transfer tax. In a public *meeting* as distinguished from a hearing, council does not entertain any comment from the public. The committee rejected the proposed increase.

Later in the public meeting, in the early morning hours of May 25, 1988, Councilman Street again proposed the same amendment, changing the realty transfer tax from 2.5% to 4.0%. At that time, the committee approved Councilman Street's proposal and reported Bill 164 out of committee.

At no time after Councilman Street's amendment, which for the first time specified the amount of the in-

crease, did council provide for any public hearings on the point. On May 31, 1988, council, without holding any further public hearings, took a final vote on Bill 164, which, in its final form, provided for the realty transfer tax to be increased from 2.5% to 4.07%, and passed Bill 164.

On June 24, 1988, Max Weiner and the Consumer Education and Protective Association filed a complaint in equity, and a motion for a temporary restraining order and preliminary injunction in the Court of Common Pleas of Philadelphia County. Weiner asserts that, because the amount of the increase of the realty transfer tax in Bill 164 was not disclosed until after the close of the public hearings, council enacted Bill 164 in violation of the charter. On June 30, 1988, Judge GOLDMAN granted Weiner's motion for a preliminary injunction.

Before preliminary injunction will issue, a party must establish all of the following:

> (1) immediate and irreparable harm not compensable by damages; (2) greater injury resulting from a refusal of the injunction than from a grant of it; (3) effectiveness of the injunction in restoring the status quo; and (4) an actionable wrong abatable by the injunction. . . . Moreover, a preliminary injunction will not be granted unless the petitioner's right is clear and the wrong is manifest.

*Price v. Grencavage,* 109 Pa. Commonwealth Ct. 361, 363, 531 A.2d 108, 109 (1987).

In determining the propriety of an order granting a preliminary injunction, this court must determine whether there were any apparently reasonable grounds of record to justify the chancellor's issuance of the injunction. *Fischer v. Department of Public Welfare,* 497 Pa. 267, 439 A.2d 1172 (1982).

*Actionable Wrong*

We will first determine whether the actions of council constituted an actionable wrong. The Philadelphia Home Charter provides, in pertinent part:

**Section 2-201. Manner of Introduction, Consideration and Passage of Ordinances.**

. . . .

(2) Before a bill shall be considered by the Council it shall be referred to a committee, considered at a public hearing, reported by the committee, printed as reported, and distributed to the members of the Council and made available to the public.

(3) No bill shall be so altered or amended during its passage as to change its original purpose. Bills amended shall be printed as amended for the use of the members of the Council and for the information of the public.

. . . .

(5) Notice of public hearings on bills and notice of bills reported from committee shall be given by advertising in three daily newspapers of the City having the largest paid circulation, the title of the bill, and in the case of a public hearing, the time and place of the hearing, not less than five days before the public hearing or before the bill comes up for final consideration, as the case may be. In addition, such other notice may be given as will bring public hearings or reported bills to the attention of interested citizens. There need be no advertisement of ordinances after their passage.

The stated purpose of section 2-201 is:

to prevent the hasty consideration and enactment of ordinances before citizens and the

members of council themselves have had the opportunity to be heard on the subject matter and to consider the wisdom of the proposed legislation.

Thus upon its introduction, a bill must be referred to a committee, considered at a public hearing, at which citizens may testify . . .

The Pennsylvania Supreme Court, in striking down legislation that failed to comply with section 2-201, stated that "[t]here can be no question that an ordinance is invalid if it fails to comply with legal requirements of this nature." *Schultz v. City of Philadelphia*, 385 Pa. 79, 82, 122 A.2d 279, 281 (1956).

As stated above, this bill was an amendment to section 19-1402 of the Philadelphia Code, which provides for a realty transfer tax on all sales of real estate in the City of Philadelphia. The bill, as introduced, failed to indicate the new rate of tax, but merely left the amended rate blank. The bill was advertised for public hearings with the rate of tax left blank. Moreover, throughout the three days of public hearings, the amount of the rate of the tax, the only proposed amendment to section 19-1403 of the Philadelphia Code, remained blank. Not until after council ended the public hearings and went into its public meeting was the public made aware of the proposed tax rate, which amounted to more than a 60% increase in the tax. The public meeting is different from the hearing, in that no citizen participation is involved in the former.

A tax measure which proposes to tax at "____" rate is meaningless. The rate of tax is an essential component of a bill to amend the rate of tax. Hence, no genuine tax rate revision bill was "considered at a public hearing," contrary to Charter section 2-201(2).

The city contends that section 2-201 was not violated, and cites the case of *Silver v. Rizzo*, 39 Pa. Com-

monwealth Ct. 117, 395 A.2d 296 (1978) to support that contention. In *Silver,* an amendment to the city wage tax was proposed, and as in this case, the amendment consisted only of a change in the rate of the tax. The bill was advertised with the proposed rate of tax left blank. Public hearings on the bill were held on May 13, 17, 20 and 27, 1976. Council finally supplied the proposed rate of the tax at the hearing on May 20, 1976. This court determined that filling in the rate of tax on May 20 did not so change the subject matter of the bill so as to re-quire re-advertisement and new public hearings.

The city asserts that the facts of this case are identi-cal to those in *Silver,* and therefore, that Bill 164 was properly enacted. However, the city has missed two im-portant distinctions. In *Silver,* this court only held that (1) the bill's title was not invalid, and (2) after the blank tax rate was filled in, council did not have to readvertise the bill and hold *new* public hearings. The factual premise, as stated in *Silver,* was that public hearings continued *after* the proposed tax rate became public.[2] Thus in *Silver,* the citizens did have an opportunity to be heard on the proposed amount of the tax rate.

In this case, the public never had an opportunity to voice their opinion on the proposed tax rate.

Accordingly, we conclude that council enacted bill 164 in violation of section 2-201 of the charter, and that

---

[2] The facts, as stated by this court in the *Silver* opinion, are that public hearings were held on May 20 and 27, after the inser-tion of the tax rate. A review of the record in the *Silver* case in-dicates that the sessions of council held on May 20 and 27, 1976 may have been public meetings rather than public hearings. The point is not controlling in this case because the holding in *Silver* is based upon this court's finding that the May 20 and 27, sessions of council were public hearings. In this case there is no dispute that the tax rate was never presented until after the completion of the public hearings.

this violation constitutes an actionable wrong. *Price,* 109 Pa. Commonwealth Ct. at 363, 531 A.2d at 109.

## Irreparable Harm

Next we consider whether the refusal of the chancellor to grant the injunction would lead to an irreparable harm. At the hearing before the chancellor, testimony was presented of real estate transactions that were not completed due to the increased costs of making that transaction because of the increase in the realty transfer tax. Thus, the chancellor had a reasonable basis to conclude that, because of the unique nature of real estate, an increase in the realty transfer tax which had a chilling effect on individuals purchasing property involved an irreparable harm that could not be compensated by money damages.

## The Greater Harm

We now determine whether the Chancellor had a reasonable basis for concluding that citizens of Philadelphia would suffer a greater harm by not granting the injunction than the harm suffered by the city as a consequence of the chancellor's granting of the injunction.

The city's own witnesses testified that alternative revenue sources could be used to compensate for any loss of tax revenue caused by the invalidation of the improperly enacted amendment to the realty transfer tax.

As indicated above, the chancellor found that the increase in the realty transfer tax would have a chilling effect on the sale of real estate. Because of the increase in the transfer tax, a person might not be able to sell or purchase a piece of real estate.

Therefore, we conclude that the chancellor did have reasonable grounds to conclude that the citizens would

suffer a greater harm if the injunction was not granted than the city did by his granting the injunction.

## The Status Quo

Finally, we must determine whether the chancellor's granting of the injunction effectively restores the status quo. The realty transfer tax before the invalid enactment of Bill 164 stood at 2.5%. Thus, by granting the injunction enjoining enforcement of improperly enacted realty transfer tax, the chancellor has restored the parties to the place they existed before the improperly enacted tax. The city contends that, because it subsequently enacted a budget which included the increased realty transfer tax, the injunction would not restore it to the status quo. The subsequent actions of the city, which rely on the improperly enacted increase in the tax, do not affect the status quo at the time of the passage of the tax increase. Therefore we conclude that the chancellor had a reasonable basis to determine that the injunction served to preserve the status quo.

Having concluded the chancellor had reasonable grounds in the record to find that Weiner had established the four requirements for entitlement to a preliminary injunction, we affirm the decision of Judge GOLDMAN granting a preliminary injunction enjoining enforcement of the amendment to section 19-1403 of the code.

## ORDER

NOW, November 15, 1988, the order of the Court of Common Pleas of Philadelphia County at No. 3659 June Term, 1988, dated June 30, 1988, is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

Judge DOYLE dissents.

Judge PALLADINO dissents.